IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RONALD WASON MIGUEL,<br><br>    Petitioner,<br><br>  v.<br><br>CONNIE GIPSON,<br><br>    Respondent. | No. C 12-0167 EJD (PR)<br><br>**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS; DENYING CERTIFICATE OF APPEALABILITY** |

Petitioner, a state prisoner proceeding with counsel, has filed a petition for a writ of habeas corpus under 28 U.S.C. § 2254 challenging his state conviction from Santa Clara County Superior Court. For the reasons set forth below, the Petition for a Writ of Habeas Corpus is **DENIED**.

## BACKGROUND

Petitioner was found guilty by a jury of ten counts of sexual intercourse or sodomy with a minor ten years of age or younger (Penal Code § 288.7(a))[1] and thirteen counts of oral copulation or sexual penetration with a minor ten years of age or younger (§ 288.7(b)). Petitioner was sentenced to state prison for 445 years to

---

[1] All further unspecified statutory references are to the California Penal Code.

Order Denying Petition; Denying COA
N:\EJD Habeas\00167Miguel_denyHC.wpd

life on March 27, 2009.

Petitioner appealed his conviction. On July 26, 2010, the California Court of Appeal affirmed Petitioner's conviction and sentence. (Ans. Ex. 6.) The California Supreme Court denied review on October 13, 2010. (Id., Ex. 8.)

**FACTUAL BACKGROUND**

The following facts are taken from the opinion of the California Court of Appeal:

> I. Prosecution Case
> In March of 2008 eight-year-old J.D. told her mother that defendant had been touching her on her rectum. J.D. also said that defendant had "kissed" her "down there," indicating her vaginal area. Defendant admitted to J. D.'s mother that he had touched J. D.'s rectum.
>
> After this revelation, J. D.'s mother left defendant, who was her live-in boyfriend, and moved J.D. and the mother's other children into a homeless shelter and a domestic violence center. Later she moved to her own mother's residence.
>
> J.D. testified as follows:
>
> J.D. was about six or seven years old when defendant began to sexually abuse her. At times she would yell for her mother, but she would be asleep and not come to her aid.
>
> Defendant would penetrate J. D.'s vagina and anus with his penis. He would pull down her pants and insert his penis in both orifices. His penis was not erect on these occasions and he would use a lubricant. He committed the vaginal penetrations "A lot of times," specifically about 50, and the anal penetrations more than 10 times. These acts caused J.D. pain and she would notice bleeding afterward.
>
> Defendant would use his hands to touch J.D. on her external genitalia and rectum, either under or over J. D.'s clothing. He did this "A lot."
>
> Approximately twice, defendant inserted a finger or fingers into J. D.'s vagina.
>
> Defendant would use his mouth to contact J. D.'s external genitalia and rectum. J.D. thought that this occurred 12 times.
>
> Once or twice, defendant tried to force J.D. to orally copulate him. He grabbed her leg while she was climbing the stairs in the house and toppled her. He took the back of J. D.'s head and forced her mouth onto his penis, trying to insert it.
>
> Defendant would grab J. D.'s wrist and make her rub his penis. He

did this "A lot of times."

A police officer testified that J.D. gave him similar information when he interviewed her. The police videotaped a second interview, in which J.D. provided details also consistent with her testimony, and the jury watched the recording. In addition, J.D. had testified at the preliminary examination and the jury heard her testimony. J. D.'s extrajudicial and preliminary examination statements were largely consistent with her testimony in court. Some estimates of the number of assaults varied from her in-court testimony, however. She estimated the number of acts of intercourse at 30 to 50, sodomy at 50, oral copulations by him of her at 50, by her of him at one, of vaginal penetrations with fingers at three, and the total number of sexual assaults at 200.

The police videotaped an interview with defendant in which he admitted sexually abusing J.D. but denied any acts of sexual intercourse, sodomy, or sexual penetration with his fingers. The jury watched the recording.

II. Defense Case
Defendant presented no defense case. Of course, through the taped interview of him that the jury heard, he was able to suggest to the jury that he committed much less sexual abuse than J.D. described in and out of court.

(Ans. Ex. 6 at 2-3.)

## DISCUSSION

Standard of Review

This Court may entertain a petition for a writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The writ may not be granted with respect to any claim that was adjudicated on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme]

Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." Williams v. Taylor, 529 U.S. 362, 412-13 (2000). The only definitive source of clearly established federal law under 28 U.S.C. § 2254(d) is in the holdings (as opposed to the dicta) of the Supreme Court as of the time of the state court decision. Williams, 529 U.S. at 412; Brewer v. Hall, 378 F.3d 952, 955 (9th Cir. 2004). While circuit law may be "persuasive authority" for purposes of determining whether a state court decision is an unreasonable application of Supreme Court precedent, only the Supreme Court's holdings are binding on the state courts, and only those holdings need be "reasonably" applied. Clark v. Murphy, 331 F.3d 1062, 1069 (9th Cir.), overruled on other grounds by Lockyer v. Andrade, 538 U.S. 63 (2003).

"Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." Williams, 529 U.S. at 413. "Under § 2254(d)(1)'s 'unreasonable application' clause, . . . a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." Id. at 411. A federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was "objectively unreasonable." Id. at 409. The federal habeas court must presume correct any determination of a factual issue made by a state court unless the petitioner rebuts the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

The state court decision to which Section 2254(d) applies is the "last reasoned decision" of the state court. See Ylst v. Nunnemaker, 501 U.S. 797, 803-04 (1991); Barker v. Fleming, 423 F.3d 1085, 1091-92 (9th Cir. 2005). When there is no reasoned opinion from the highest state court considering a petitioner's claims,

the court "looks through" to the last reasoned opinion.  See Ylst, 501 U.S. at 805.

The Supreme Court has vigorously and repeatedly affirmed that under AEDPA, there is a heightened level of deference a federal habeas court must give to state court decisions.  See Hardy v. Cross, 132 S. Ct. 490, 491 (2011) (per curiam); Harrington v. Richter, 131 S. Ct. 770, 783-85 (2011); Felkner v. Jackson, 131 S. Ct. 1305 (2011) (per curiam).  As the Court explained: "[o]n federal habeas review, AEDPA 'imposes a highly deferential standard for evaluating state-court rulings' and 'demands that state-court decisions be given the benefit of the doubt.'"  Id. at 1307 (citation omitted).  With these principles in mind regarding the standard and limited scope of review in which this Court may engage in federal habeas proceedings, the Court addresses Petitioner's claim.

### Claim and Analysis

Petitioner's sole ground for federal habeas relief is his claim that the trial court issued improper jury instructions that did not adequately distinguish between violations of Pen. Code § 288.7(a) and § 288.7(b).  Section 288.7(a) requires penile penetration of the victim, while any type of sexual penetration is sufficient to find a violation of § 288.7(b).  Petitioner argues that because the instructions did not describe the difference between "sexual intercourse" and "sexual penetration," the jury could have thought that any sexual penetration could be considered sexual intercourse and thus they found Petitioner guilty of § 288.7(a), which resulted in a lengthier prison term.

A challenge to a jury instruction solely as an error under state law does not state a claim cognizable in federal habeas corpus proceedings.  See Estelle v. McGuire, 502 U.S. 62, 71-72 (1991).  See, e.g., Stanton v. Benzler, 146 F.3d 726, 728 (9th Cir. 1998) (state law determination that arsenic trioxide is a poison as a matter of law, not element of crime for jury determination, not open to challenge on federal habeas review).  Nor does the fact that a jury instruction was inadequate by Ninth Circuit direct appeal standards mean that a petitioner who relies on such an

Order Denying Petition; Denying COA
N:\EJD Habeas\00167Miguel_denyHC.wpd         5

inadequacy will be entitled to habeas corpus relief from a state court conviction. See Duckett v. Godinez, 67 F.3d 734, 744 (9th Cir. 1995) (citing Estelle, 502 U.S. at 71-72).

To obtain federal collateral relief for errors in the jury charge, a petitioner must show that the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process. See Estelle, 502 U.S. at 72; Cupp v. Naughten, 414 U.S. 141, 147 (1973); see also Donnelly v. DeChristoforo, 416 U.S. 637, 643 (1974) ("'[I]t must be established not merely that the instruction is undesirable, erroneous or even 'universally condemned,' but that it violated some [constitutional right].'"). The instruction may not be judged in artificial isolation, but must be considered in the context of the instructions as a whole and the trial record. See Estelle, 502 U.S. at 72. In other words, the court must evaluate jury instructions in the context of the overall charge to the jury and as a component of the entire trial process. United States v. Frady, 456 U.S. 152, 169 (1982) (citing Henderson v. Kibbe, 431 U.S. 145, 154 (1977)); Prantil v. California, 843 F.2d 314, 317 (9th Cir. 1988); see, e.g., Middleton v. McNeil, 541 U.S. 433, 434-35 (2004) (per curiam) (no reasonable likelihood that jury misled by single contrary instruction on imperfect self-defense defining "imminent peril" where three other instructions correctly stated the law).

The state appellate court rejected Petitioner's claim of improper jury instructions:

> Defendant claims that, with regard to counts 1, 3, 4, 5, and 6, i .e., the charges on which the jury was instructed to consider the sexual intercourse evidence against him, the trial court erred under state law by failing to instruct, sua sponte, in a clear manner on the elements of section 288.7, subdivision (a), i.e., the law giving rise to the accusations that he unlawfully engaged in sexual intercourse with J.D. Specifically, defendant contends that the court was required to define sexual intercourse as penetration of a vagina with a penis and failed to do so, and failed to distinguish sexual intercourse from other forms of sexual penetration.
>
> . . .

> With regard to counts 1, 3, 4, 5, and 6, the trial court provided the jury with CALJIC No. 10.59.5. We quote the instruction in pertinent part: "Any person 18 years of age or older who engages in sexual intercourse with a child who is 10 years of age or younger is guilty of a violation of Penal Code section 288.7, subdivision (a), a crime. [¶] Any sexual penetration, however slight, constitutes engaging in an act of sexual intercourse. Proof of ejaculation is not required."
>
> "A defendant challenging an instruction as being subject to erroneous interpretation by the jury must demonstrate a reasonable likelihood that the jury understood the instruction in the way asserted by the defendant." (People v. Cross (2008) 45 Cal.4th 58, 67-68 [speaking of both state law and federal constitutional claims].)
>
> We discern no such reasonable likelihood.
>
> To be sure, trial courts must provide clarifying instructions when a word or phrase has a technical or legal meaning different from its commonly understood meaning. "'"A word or phrase having a technical, legal meaning requiring clarification by the court is one that has a definition that differs from its nonlegal meaning." [Citations.]'" ( People v. Cross, supra, 45 Cal.4th at p. 68.)
>
> "Sexual intercourse," as used in CALJIC No. 10.59.5, has no such obscure meaning. Part of the question is resolved by Supreme Court decisions holding that "sexual intercourse" is commonly understood by jurors to refer to penetration of the vagina. (See People v. Stitely (2005) 35 Cal.4th 514, 554 ["'sexual intercourse' has a common meaning ... the term can only refer to vaginal penetration or intercourse"]; People v. Holt (1997) 15 Cal.4th 619, 676 ["sexual intercourse" is not "a technical term with various meanings"; juries understand that it requires "penetration of the victim's vaginal genitalia"].) The other part of the question is resolved elsewhere in the instructions given. Although, perhaps because the point is obvious, Stitely and Holt do not refer to the penis as the organ doing the penetrating, the jury here was instructed that "[a]ny sexual penetration, however slight, constitutes engaging in an act of sexual intercourse. Proof of ejaculation is not required." That both defined the penetration referred to in the challenged portion of the instruction as sexual intercourse and, to a reasonable likelihood, informed jurors that intercourse is accomplished with a penis. The court had no duty to define yet further "sexual intercourse" in its instructions. In sum, defendant's claim is without merit.

(Ans. Ex. 6 at 3-6) (footnote omitted).

The petition, which was prepared by counsel, makes no reference to any federal authority and cites no federal law other than 28 U.S.C. § 2254. The claim solely challenges the jury instructions as an error under state law and fails to state a federal claim. See Estelle, at 71-72. While federal habeas relief can be obtained if Petitioner shows that the ailing jury instruction so infected the entire trial that the

resulting conviction violates due process, see Estelle, at 72, no such allegations are present in the petition. Regardless, the Court will still construe the claim as alleging a violation of due process.

Petitioner has failed to demonstrate that the jury instructions were confusing, let alone that a due process violation occurred. As noted by the state court, sexual intercourse is a commonly used and understood term, and the jury instruction noted that proof of ejaculation was not required, which reinforced that sexual intercourse involved the penis. Furthermore, in closing argument the prosecutor specifically described what was required to find sexual intercourse:

> The judge told you the first five counts - - or five of the counts are for sexual intercourse.
>
> . . .
>
> And for this act - - any penetration of the vagina by defendant's penis is sufficient to complete the crime. . . . That means, literally, penis inside the lip of the vagina. Rubbing up against the vagina, that's penetration. It doesn't need to be full penetration of the penis. Any penetration, however slight.

(Ans. Ex. 9, Reporter's Transcript at 393.) Later in the closing argument the prosecutor again discussed how sexual intercourse involves the penis. (Id., at 417.)

The prosecutor also explained the other counts against Petitioner including "sexual penetration." (Id., at 394, 418.) The prosecutor described sexual penetration as, "[w]e're talking about the finger, him putting his finger either inside her vagina or even rubbing it out on the lips of the vagina, which is still penetration." (Id., at 418.) The differences of these two counts were clear, and Petitioner's trial counsel also noted the differences. (Id., at 480-83.)

This claim is denied because Petitioner has failed to present a federal claim, and regardless, the jury instructions did not violate due process because there was no likelihood that the jury was confused and because the attorneys specifically described the differences of the various counts.

Order Denying Petition; Denying COA
N:\EJD Habeas\00167Miguel_denyHC.wpd        8

## CONCLUSION

After a careful review of the record and pertinent law, the Court concludes that the Petition for a Writ of Habeas Corpus must be **DENIED**.

Further, a Certificate of Appealability is **DENIED**. See Rule 11(a) of the Rules Governing Section 2254 Cases. Petitioner has not made "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Nor has Petitioner demonstrated that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Slack v. McDaniel, 529 U.S. 473, 484 (2000). Petitioner may not appeal the denial of a Certificate of Appealability in this Court but may seek a certificate from the Court of Appeals under Rule 22 of the Federal Rules of Appellate Procedure. See Rule 11(a) of the Rules Governing Section 2254 Cases.

The Clerk shall terminate any pending motions, enter judgment in favor of Respondent, and close the file.

IT IS SO ORDERED.

DATED: 1/7/2015

EDWARD J. DAVILA
United States District Judge